[No. 415. Decided February 3, 1892.]

C. B. RUNYAN, _Respondent_, v. E. RUSSELL, E. J. RUSSELL
AND J. S. LONG, _Appellants_.

APPEAL—DISMISSAL—ACCOUNTING—PLEADING.

The filing of an appeal bond before notice of appeal is given is no ground for the dismissal of an appeal.

The plaintiff being the owner of certain logs, which he had mortgaged to defendant L., made a contract with defendant R. to sell and deliver him the logs, and R. was to saw the logs into lumber, sell the lumber in the market, and out of the proceeds pay plaintiff

$4 per thousand for smooth logs and $3 for rough ones; the first money received by R. for lumber was to be applied to the payment of the drivers employed in delivering the lo s, and the next moneys applied in payment of L.'s mortgage, these items to be charged as cash on the purchase money of the logs; the title to the logs was not to pass to R. until they were paid for as provided in the contract. The plaintiff brought an action against R. and L. for an accounting, but the complaint did not set out the contract nor allege a delivery of the logs by plaintiff, or that the logs had been sawed, or any money realized from sales of lumber. *Held,* That the complaint stated no cause of action against either defendant.

*Appeal from Superior Court, Lewis County.*

The facts are stated in the opinion.

*N. C. Richards,* for appellant Long; *Reynolds & Stewart,* for appellants Russell.

*Van Fossen & Ramage,* for respondent.

The opinion of the court was delivered by

STILES, J.—That the bond of the appellants Russell & Co. was filed before the notice of appeal was given is not, in our judgment, good ground for dismissal. Our statute fully protects the respondent in case the bond is defective or the sureties insufficient, and that is all that he can reasonably demand. The motion to dismiss is therefore denied.

The plaintiff below, on the 7th day of February, 1890, assuming to be the owner of about four hundred thousand feet of good, merchantable logs, part of which lay in the Chehalis river and the remainder in the east branch of that river, and all of which he had therefore mortgaged to defendant Long to secure the payment of $337.65, then past due, executed to defendants Russell a contract to sell and deliver the logs to them at their boom, in or near Chehalis, on or before April 1, 1891. Russell & Son, on their part, undertook, with all reasonable and convenient dispatch, to saw the logs into lumber and sell the lumber in the market,

and out of the proceeds, as fast as realized, to pay Runyan four dollars per thousand feet for smooth logs and three dollars for rough ones, according to the "Spaulding rule" and the measurement of a scaler to be employed by Runyan. The first money received by Russell & Son for lumber was to be devoted by them to the payment of the drivers to be employed by Runyan in delivering the logs; and the second money was to be paid to Long, until $337.65, with interest at one per cent. per month from June 1, 1889, had been so paid to him; both of these items were to be charged as cash paid to Runyan on account of the purchase money of the logs. There were clauses in the contract in this language:

"It is expressly understood and agreed that no property interest or right in the said logs of lumber specified in this contract, otherwise than as holders of an agreement to purchase as herein set forth, is to pass to the parties of the second part (Russell & Son) until the same has been paid for as provided for in this contract." And "This agreement is not to be of any binding force or effect as to the parties of the second part until assented to in writing by the said J. S. Long."

Long, in consideration of one dollar paid by Russell & Son, assented to the agreement made between them and Runyan, and agreed to hold them responsible to him only as set forth therein, but limited his assent in these words: "But this assent is not to interfere with the right, or any rights between the party of the first part and said J. S. Long."

On the 26th day of February, 1891, Runyan filed his complaint against the Russells and Long, alleging the partnership of the Russells, his own indebtedness to Long, his ownership of the logs and their value, and his construction of the legal effect of his contract with the Russells, viz., that they were his agents to manufacture the logs into lumber, market the lumber and distribute the proceeds,

they retaining the balance after paying the expenses, Long's debt and the agreed price of the logs, as their compensation for sawing and marketing. The contract was not set out, nor was there any allegation showing a delivery of the logs by him, or any other compliance with the contract as it existed, or that the logs had been sawed or any money realized from sales of lumber. In these matters it fell short of being a sufficient complaint against any of the defendants, and especially Long. But the fifth paragraph was relied upon to complete the statement of a cause of action. We quote:

"5. That the said Russell & Son, and the said J. S. Long, contriving to defraud plaintiff, have neglected and refused, and still do neglect and refuse, to account to plaintiff for any portion of said logs or lumber or the proceeds thereof; but the defendants have wrongfully converted the same to their own use."

The prayer was that the defendants account, and that plaintiff have general equitable relief. Both sides treated the case as an equitable action, although the "conversion" is evidently intended to be the basis of recovery. No fact constituting legal fraud is pleaded, since, conceding Russell & Son to have been mere agents, it is not charged that they ever had either logs or money upon which a demand to account could have been predicted. Long certainly stood in no relation, as disclosed by the complaint, warranting the plaintiff in calling him to an account, for he is not alleged to have had any of plaintiff's property in his possession.

Russell & Son answered separately, setting up the contract, and alleging Runyan's failure to deliver to them any but a small portion (about one-tenth) of the logs, which they had marketed for $176.65, out of which they had paid $23.87 for expense of driving, and the balance $152.78 to Long on account of his debt. This was, in

itself, an accounting, and as there was no reply to their answer, Russell & Son were entitled to be dismissed.

Long's answer also set out the contract and his assent thereto, and alleged his debt, and that it was secured by a recorded chattel mortgage on the logs. He further showed that he had, as he claimed, lawfully foreclosed his chattel mortgage in September, 1890, and sold the logs for $281, the unpaid portion of his debt and the costs. Plaintiff replied to Long's answer, admitting a pretended foreclosure sale of his logs, but denying that any lawful proceeding had been taken for that purpose. Other matters in the reply were wholly immaterial and not responsive to any new matter raised by the answer.

In this state of the pleadings the cause was tried. Plaintiff introduced no testimony, under an intimation from the court that his case was admitted by the pleadings. Thereupon Russell & Son moved to dismiss as to them, which motion was denied. Defendants thereupon sought to show that no logs but those admitted by the answer of Russell & Son were delivered; that the logs sold by Long under his foreclosure were not merchantable logs, but were water-soaked and rotten, so that they were worth but little, of which Runyan had notice; that for the reason that the logs were of such inferior quality they notified him that these logs could not be received under the contract; and that, therefore, Long sold them to save his debt—all of which was refused by the court. But at this point a fact appeared which was not hinted at in the pleadings on either side, viz., that the defendants Russell & Son were the purchasers at Long's foreclosure sale. It simply seemed to be assumed by court and counsel to be true without any testimony on the subject. The defendants offered to show other facts, few of which were relevant to the case under the pleadings, but some of which may have been pertinent to it as tried; but all of them were

ruled out. And the court thereupon rendered judgment for plaintiff upon the pleadings, to do which it made the following conclusive presumptions against the defendants: (1) That 352,258 feet of logs were sold by Long. (2) That a part of them exactly proportioned to the number of four dollar logs delivered by Runyan were of that class. (3) That another part exactly proportioned to the number of three dollar logs delivered were of that class.

Viewing this case from the standpoint of equity, where the respondent himself placed it, we should say that none of these presumptions should have been indulged in. Under the contract he was to get a certain sum per thousand feet of good merchantable logs, as they should turn out to be, smooth or rough, and out of this price the expenses of delivery and Long's debt were to be first paid. Russell & Son alone were responsible for the price, and then only when Runyan should have delivered them, and they were merchantable, and had been sawed up and sold. Long, at the most, could only be held to keep hands off until April 1, 1891, or to pay such damages as he might occasion by selling under his mortgage at an earlier date. No action for an accounting could lie against him under any circumstances, and any damages a court might give for his premature sale would be limited to the actual injury suffered, not by the plaintiff's loss of rotten or worthless logs, but by his loss of such logs as Russell & Son were to convert into lumber. There was nothing either in his chattel mortgage or in his assent to the contract which bound him to a certain number of feet or to value of the logs; and especially there was no basis whatever for presuming against him that because about sixty per cent. of the logs admitted by Russell & Son to have been sawed were of the first class, and forty per cent of the second class, therefore the remaining nine-tenths of the lot were of the two classes in precisely the same proportions.

As to the liability of Russell & Son, assuming them to have been agents as claimed, and therefore subject to account, there is no ground in the case presented for a judgment against them. Respondent made no reply to the accounting they furnished in their answer and their allegation that they had received no logs other than those therein accounted for. But if we admit it to be in the case that they were the purchasers at Long's sale, it would be difficult to find a reason why they might not be the successful bidders as well as another. Unless Long assented to the contract they were not to be bound by it, and if, disregarding his assent, he sold, what principle could make them responsible? Possibly if some fraudulent collusion were made to appear between them and Long, whereby the sale was brought about, or if the sale were void and not merely irregular, a court of equity would consider the logs coming into their hands as there under the contract and not by the purchase. But in that contingency it must somewhere appear that the conditions of the contract have transpired, viz., that the logs were merchantable, that they have been sawed, and that the lumber has been marketed, or that Russell & Son have not acted with reasonable diligence. It is true that in his reply to Long's answer the plaintiff says that the logs have been reduced to lumber; but he does not say that they had been so reduced when the action was commenced, or that any of the lumber had been sold; besides which a plaintiff cannot be allowed to make his case by his reply, and this allegation was not made as against Russell & Son at all.

The judgment will be reversed, and the action dismissed as to both defendants.

ANDERS, C. J., and DUNBAR and HOYT, JJ., concur. SCOTT, J., not sitting.